# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

MWASI SONGAMBELE,

       Plaintiff,

v.                                    CASE NO.  4:10cv241-RH/WCS

GODFREY O. ONUGHA, D.M.D., et al.,

       Defendants.

_____/

## ORDER DISMISSING THE CLAIMS AGAINST THE WARDEN

This prisoner civil-rights case is before the court on the defendant warden's motion to dismiss on various grounds including qualified immunity and failure to exhaust administrative remedies.  This order grants the motion.

I

On January 19, 2010, the prison dentist—the defendant Dr. Godfrey O. Onugha—engaged in a sex act with the plaintiff Mwasi Songambele, an inmate at the Federal Correctional Institution–Tallahassee.  She asserts that Dr. Onugha forced her to do participate.  Dr. Onugha admits the act but asserts that Ms. Songambele participated voluntarily and indeed initiated it.

Ms. Songambele promptly complained.  Dr. Onugha was immediately

removed from the facility, and Ms. Songambele was placed in the special housing

unit or "SHU." Bureau of Prisons policy allows an inmate who has complained

about a prison authority to be placed in the SHU to protect the inmate from

retaliation.

More than a month later, on February 28, 2010, the defendant W. T. Taylor

arrived as the new warden at FCI–Tallahassee. In March and April he fielded

requests from subordinates and an assistant United States Attorney for Ms.

Songambele's release from the SHU. But he kept her there until April 14, 2010.

At that point Ms. Songambele was transferred in succession to two county jails that

sometimes house prisoners in this district under contracts with the federal

government. Ms. Songambele came back to FCI–Tallahassee on May 25, 2010, in

order to facilitate her transfer to a federal facility in Miami on May 26, 2010.

Ms. Songambele filed this lawsuit against Dr. Onugha for coercing her into

the sex act. She later added a claim against Mr. Taylor for keeping her in the SHU

between February 28 and April 14, 2010, and transferring her to the county jails.

Ms. Songambele asserts that she was kept in the SHU and transferred in retaliation

for complaining about Dr. Onugha. Mr. Taylor moved to dismiss on various

grounds including failure to exhaust and qualified immunity.

## II

Under the Prison Litigation Reform Act, a prisoner must exhaust any

"available" administrative remedy before filing a lawsuit of this kind. 42 U.S.C. § 1997e. Ms. Songambele acknowledges this, and she acknowledges that, with respect to Mr. Taylor's allegedly unconstitutional acts, she did not file a formal grievance as ordinarily required. But she says this was not a remedy available *to her* because two officers told her that if she filed a grievance about being in the SHU she would be transferred to a different facility away from her family.

An administrative remedy is not "available" if the only reason a prisoner does not invoke it is a correctional officer's threat of adverse action. So if the officers threatened to transfer Ms. Songambele in retaliation for filing a grievance, Mr. Taylor's exhaustion defense fails.

Under the law of the circuit, a factual dispute on a remedy's availability may properly be determined on a motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.") (citations and footnotes omitted). The circuit has established this process for resolving disputes of this kind:

> First, the court looks to the factual allegations in the defendant's

motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. *See Bryant*, 530 F.3d at 1373-74 (concluding that there was a genuine issue of material fact about the availability of administrative remedies before addressing the propriety of the district court acting as a factfinder to resolve the issue). . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. *Bryant*, 530 F.3d at 1373-74, 1376. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077,1082-83 (11th Cir. 2008).

Under this framework, whether Ms. Songambele chose not to file a formal grievance because of a threat by the two correctional officers is a disputed factual issue on which I am the fact finder. My finding is that there was no threat. My finding instead is that the officers were attempting to provide good counsel to Ms. Songambele. The Bureau of Prisons attempts to protect inmates from retaliation from an officer about whom the inmate has complained and from other officers who might take issue with the inmate for complaining. One way to protect an inmate is to place her in the SHU. Another is to transfer her to a different facility. An officer could hardly be faulted for accurately telling an inmate in Ms. Songambele's situation that if she wished to remain in Tallahassee, the best course

might be to patiently await release from the SHU.  My finding is that this is essentially what happened.

My finding further is that Ms. Songambele chose—not with the clarity of analysis suggested in this order but with a rough understanding of her options—not to file a formal grievance.  She did not wish to be transferred, and so she chose to be patient.  For an inmate who wished to remain close to family and friends, it was a strategy that made sense.  As it turned out, the strategy was unsuccessful.  But an inmate's choice to pursue a reasonable if ultimately unsuccessful strategy—and corresponding choice not to file a formal grievance—does not render a grievance "unavailable" or excuse the failure to exhaust.

### III

Qualified immunity applies to damages claims against public officers and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).  *See generally Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Thus a public officer may be held individually liable only if the officer's conduct violates clearly established law.

The law is settled that a warden cannot put an inmate in the SHU or transfer the inmate in retaliation for exercising a constitutional right.  An inmate has a

constitutional right to complain about a prison official's sexual assault. So Mr. Taylor plainly could not keep Ms. Songambele in the SHU or transfer her in retaliation for complaining about Dr. Onugha. And that is true whether Dr. Onugha coerced Ms. Songambele into the sex act, as she alleges, or she initiated it, as he alleges.

But there is no settled law prohibiting a warden from putting an inmate who complains of sexual misconduct in the SHU to protect her from retaliation at the hands of the offending officer or other officers. There is no settled law indicating how long an inmate can be kept in the SHU for this purpose or how quickly a new warden must make a decision on this after arriving at the facility. There is no settled law prohibiting a warden from transferring an inmate under these circumstances. By keeping Ms. Songambele in the SHU for six weeks after he arrived at the facility, and later transferring her to Miami, Mr. Taylor violated no clearly established law.

To be sure, a victim of sexual misconduct ought not be put in the SHU or transferred unnecessarily. Some subordinate officers thought Ms. Songambele could be safely returned to the general population at FCI–Tallahassee, and an assistant United States Attorney involved in Dr. Onugha's prosecution recommended it. At least on this record, it appears that the subordinates and the AUSA had it right and that Mr. Taylor should have done as they recommended.

But the buck stopped with the warden. There is no exception to qualified immunity for situations in which others thought the decision should have been different. Mr. Taylor might have been wrong, but it cannot be said that he was "plainly incompetent" or "knowingly" violated the law. He is entitled to qualified immunity.

IV

For these reasons,

IT IS ORDERED:

The defendant W. T. Taylor's motion to dismiss, ECF Nos. 13 and 45, is GRANTED. All claims against this defendant are dismissed. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED on March 24, 2011.

s/Robert L. Hinkle
United States District Judge